# Exhibit "A"

# Vision, Mission and Values

**Tools |**    Print              Bookmark & Share        A A **A**

**Our Vision:**
An ethical marketplace where buyers and sellers can trust each other.

**Our Mission:**
BBB's mission is to be the leader in advancing marketplace trust. BBB accomplishes this mission by:

Creating a community of trustworthy businesses
Setting standards for marketplace trust
Encouraging and supporting best practices
Celebrating marketplace role models, and;
Denouncing substandard marketplace behavior

BBB sees trust as a function of two primary factors – integrity and performance. Integrity includes respect, ethics and intent. Performance speaks to a business's track record of delivering results in accordance with BBB standards and/or addressing customer concerns in a timely, satisfactory manner.

BBB ensures that high standards for trust are set and maintained. We exist so consumers and businesses alike have an unbiased source to guide them on matters of trust. We provide educational information and expert advice that is free of charge and easily accessible.

BBB Accreditation is an honor – and not every company is eligible. Businesses that meet our high standards are invited to join BBB. Businesses meeting BBB standards are presented to local Boards of Directors (or designees) for review and acceptance as a BBB Accredited Business. To read more about our Accreditation Standards, click here.

All BBB accredited businesses have agreed to live up to our Standards for Trust. Our Standards for Trust are a comprehensive set of policies, procedures and best practices focused on how businesses should treat the public – fairly and honestly in all circumstances. To review our Standards for Trust, click here.

BBB does not compare businesses against each other, but rather evaluates businesses against our standards – and our standards clearly speak to the character and competence of an organization.

BBB is the resource to turn to for objective, unbiased information on businesses. Our network of national and local BBB operations allows us to monitor and take action on thousands of business issues affecting consumers at any given time.

BBB is your key adviser, most reliable evaluator and most objective expert on the topic of trust in the marketplace.

**Our Values**
To accomplish our mission, we commit to the following values to guide all of our decisions and behavior, with each other and with all those we serve:

**Excellence:**
Strive to do our very best. Be accountable to the general public, our members, and to each other for everything we do. Commit to providing the highest quality service with excellence and consistency everywhere we operate.

**Integrity:**
Be honest and ethical in all of our business activities. Treat everyone with integrity, keeping our promises and learning from our mistakes. Have the courage to hold fast to our professional convictions.

**Teamwork:**
Communicate, cooperate and collaborate freely across organizational and territorial boundaries, and work as one team to fulfill our mission.

**Trust:**
Trust in our colleagues throughout the BBB system and in ourselves. Say what we mean and mean what we say. Communicate with honesty and candor.

**Respect:**
Treat everyone with respect and dignity, valuing individual and cultural differences. People are our fundamental asset. We will empower them to develop and use their talents and capabilities to the fullest.

**BBB Standards for Trust**

# Exhibit "B"

# OVERVIEW OF BBB GRADE

BBB letter grades represent the BBB's opinion of the business. The BBB grade is based on BBB file information about the business. In some cases, a business' grade may be lowered if the BBB does not have sufficient information about the business despite BBB requests for that information from the business.

BBB assigns letter grades from A+ (highest) to F (lowest). In some cases, BBB will not grade the business (indicated by an NR, or "No Rating") for reasons that include insufficient information about a business or ongoing review/update of the business' file.

BBB Business Reviews generally explain the most significant factors that raised or lowered a business' grade.

BBB grades are not a guarantee of a business' reliability or performance, and BBB recommends that consumers consider a business' grade in addition to all other available information about the business.

## GRADING ELEMENTS

BBB grades are based on information in BBB files with respect to the following factors:

1. **Business' complaint history with BBB.**

   The BBB grade takes into account the following information with respect to closed complaints that relate to a business' marketplace activities:

   Number of complaints filed with BBB against the business
   If complaints have been filed, whether BBB considers them to be of a serious nature
   If complaints have been filed, whether the business has appropriately responded to them in BBB's opinion
   If complaints have been filed, whether the business resolved the complaints in a timely manner to the customer's satisfaction
   If complaints have been filed, whether BBB's opinion is that business made a good faith effort to resolve complaints if the customer was not satisfied with the resolution
   If complaints have been filed, whether BBB's opinion is that business has failed to resolve the underlying cause(s) of a pattern of complaints.

   BBB analysis of a business' complaint history generally takes into account the business' size if BBB has reliable information from the business to establish its size. If BBB cannot reliably determine business size, it will consider business to fall within BBB's smallest size category.

2. **Type of business.**

   A business' BBB grade is lowered if, in BBB's opinion, the business falls within either of the following two categories:

   Types of business that, in BBB experience, are believed to operate in violation of the law or materially misrepresent their products/services. Businesses that fall within this category will always get an F grade.
   Types of business that, in BBB experience, are likely to generate marketplace concerns or a high level of customer dissatisfaction because of the inherent nature of the products/services offered. Businesses that fall within this category can get no higher than a C grade.

3. **Time in business.**

   A business' BBB grade is based in part on the length of time the business has been operating. Time in business is most frequently determined from information provided by the business; while BBB expects businesses to provide accurate information, BBB will verify information if BBB

has reason to believe provided information is not accurate. If the business has been asked for time in business information but does not provide it to BBB, BBB will consider business to have started at the time BBB opened its file on the business unless BBB file indicates an earlier time.

4. **Background information on business in BBB files.**

   A business' BBB grade is lowered if:

   BBB does not have basic background information on the business. BBB routinely requests background information on businesses. While businesses are under no legal obligation to provide BBB with information, the failure of a business to provide background information may lead to a lowered grade.
   BBB does not have a clear understanding of the business and its practices. This includes situations where BBB has conflicting information about the business and the business is not able to resolve the conflict to BBB's satisfaction.

5. **Failure to honor commitments to BBB.**

   A business' BBB grade is lowered if:

   Business does not honor its commitments to BBB, including commitments to abide by mediation settlement or arbitration award.
   BBB revoked the business' BBB accreditation due to business' failure to comply with its commitment to follow BBB accreditation standards.

6. **Licensing and government actions known to BBB.**

   A business' BBB grade is lowered when BBB has knowledge of the following:

   Failure of the business to have required competency licensing (i.e., licensing that requires a competency assessment or can be taken away based on misconduct by business).
   Government actions against the business that relate to its marketplace activities and, in BBB's opinion, raise questions about the business' ethics or its reliability in providing products/services.

   BBB routinely checks required competency licensing and government actions before a business is accredited by BBB. BBB does not routinely check required competency licensing and government actions for businesses that do not seek BBB accreditation, although in some cases BBB learns of these matters through its marketplace research.

7. **Advertising issues known to BBB.**

   A business' BBB grade is lowered when the business does not, in BBB's opinion, appropriately respond to BBB advertising challenges that relate to:

   Misuse of the BBB name or BBB marks; or
   Potential advertising issues identified by BBB.

   BBB advertising challenges are made at BBB's discretion when it receives complaints from consumers about advertising or when BBB identifies questionable advertising through its monitoring of local media.

## GRADING POINTS

This chart shows the maximum number of points that can be earned or deducted in the BBB grading system. Please note there are some categories in which businesses can only lose points, and for those categories a "0" is indicated as the maximum number of points that can be awarded.

| Element | Range of points that can be earned or deducted (maximum to minimum) |
| --- | --- |
| 1. Type of Business | 0 to -41 |
| 2. Time in Business | 8 to -10 |
| 3. Competency Licensing | 0 or -41 |
| 4. Complaint Volume | 20 to 2 |
| 5. Unanswered Complaints | 20 to -21 |
| 6. Unresolved Complaints | 10 to 1 |
| 7. Serious Complaints | 15 to 0 |
| 8. Complaint Analysis | 8 to -12 |
| 9. Complaint Resolution Delayed | 0 or -5 |
| 10. Failure to Address Complaint Pattern | 0 or -5 |
| 11. Government Action | 0 to -30 |
| 12. Advertising Review | 0 to -41 |
| 13. Background Information | 5 or 0 |
| 14. Clear understanding of business | 0 or -5 |
| 15. Mediation/arbitration | 0 to -41 |
| 16. Revocation | 0 or -10 |

Back to Top

# Exhibit "C"

# State of Connecticut



RICHARD BLUMENTHAL
ATTORNEY GENERAL

**Hartford**

November 10, 2010

Alan L. Cohen
Vice President and General Counsel
Council of Better Business Bureaus
4200 Wilson Blvd, Suite 800
Arlington, VA 22203-1838

Dear Attorney Cohen:

The Better Business Bureau has a long and laudable history of consumer advocacy, and has partnered with my office on many occasions to fight scams and bad business practices. Unfortunately, I am deeply concerned that certain BBB practices threaten its reputation and effectiveness as a reliable resource for consumers. In particular, the BBB's current rating system is based, in part, on the payment of inadequately disclosed accreditation fees. This financial influence is potentially harmful and misleading to consumers. I am also concerned that the BBB has granted good-business awards based on inadequate research and judging criteria. In one instance, the BBB awarded its Connecticut's BBB Torch Award to a company that soon after filed for bankruptcy and was criminally prosecuted.

I appreciate that you and your colleagues have met with my staff and engaged in serious discussions toward resolving my concerns, but much more needs to be done. I repeat my call for the BBB to de-couple enrollment fees from ratings. At a minimum, the BBB must disclose to consumers that its ratings system is influenced by fees.

My investigation of the BBB began in March 2009, after the 2008 BBB Torch Award Program (TAP) recipient, Custom Basements of Connecticut ("CBC"), defaulted on customer obligations and filed for bankruptcy. The investigation initially focused on the criteria and judging process for the TAP award. My investigation later expanded to the BBB's new letter grade, or "alpha," rating system that replaced its previous method of rating businesses "Satisfactory" or "Unsatisfactory" based on the number and resolution of consumer complaints.

I am concerned that the new alpha rating system skews ratings results in favor of BBB dues-paying businesses. The BBB allocates these businesses four extra rating points unavailable to non-members. In Connecticut, these dues apparently can range from almost four hundred dollars to five thousand dollars or more depending on the size of the business.

I find no reasonable basis for tying rating points to a membership fee -- in essence, creating what could be viewed as a "pay-to-play" system, rather than a transparent and equitable "rating" system. I understand that the BBB's position is that the additional four points are awarded to a business in recognizing that it contractually commits to follow the BBB's guidelines for resolving consumer complaints and adherence to the BBB's code of ethical standards.

The BBB could better accomplish its goals by de-coupling ratings from dues payments -- allowing businesses the option of committing to follow the BBB guidelines and ethical standards and awarding the four points irrespective of their dues-paying status. When businesses violate the guidelines or standards, the BBB could revoke the four points and alter other grading categories as appropriate.

The optimum solution is that the BBB de-couple its ratings entirely from the payment of dues. At a minimum, it should immediately and completely disclose the fee portion of its rating system to consumers who rely on the BBB's evaluation of businesses. In particular, the BBB should disclose in the main rating page the fact and amount of any accreditation fee, and that businesses are awarded four additional rating points for payment and accreditation. Furthermore, the BBB should state the most recent date when information and ratings about a business were reviewed and updated.

Separate and apart from these issues, I remain concerned that the term "rating" inaccurately describes the BBB grading system. There are clear, practical and logistical limits to the BBB's ability to accurately and fairly implement a full ratings system for businesses. Extensive resources are necessary to verify the self-reported information that the BBB receives from businesses. This information includes compliance with state and federal licensing and registration requirements, outstanding lawsuits, time in business and financial stability. My understanding is that the BBB does not have the resources to verify all self-reported business information. The BBB must disclose in a clear and prominent manner this and any other factual limitations on its rating system. Failure to do so may be misleading to consumers and adversely impact those good businesses who are not rated by the BBB -- a result that is bad for both consumers and businesses.

Furthermore, I understand that the BBB has established a separate rating system for charitable organizations. I am similarly concerned about this rating system and would appreciate any information you can provide my office concerning rating factors for non-profits and charities, fees charged to these charities and whether they also receive points for paying dues. My office has a significant statutory responsibility to protect the integrity of public charities.

I thank the Connecticut BBB for its efforts to address my concerns regarding the TAP. Specifically, my investigation questioned the reliability of the self-nominating process in which the TAP judges failed to keep minutes of their meetings, require information concerning financial stability, maintain memoranda or notes regarding verification of application information, and used only the documents and information provided by the nominees to make their decisions. Furthermore, the judges did not contact third parties, such as customers or other businesses or government agencies, to verify the accuracy of any of the information contained in the applications.

I am pleased to learn that the Connecticut BBB has altered the TAP, first by adding two new criteria requiring applicants to supply: (1) information demonstrating that the business is meeting its financial obligations, including but not limited to a current credit report, annual certified financial audit, and/or current Dun & Bradstreet report; and (2) three references that BBB will contact to discuss the business' reputation in the industry, community and with customers.

I understand that further changes to the TAP will include verification of applicant information through third-party sources, including court records and government agencies. Additionally, judges now conduct on-site visits for all finalists. If no applicant ultimately meets the TAP criteria for the award, no award will be given that year. While the changes made to the TAP so far are good first steps, all the promised changes should be implemented by next year's TAP.

The Council of Better Business Bureaus should promulgate a uniform, reliable set of standards governing business awards. My hope is that the Connecticut BBB -- after implementing my recommendations -- will serve as a model for BBB councils throughout the United States

My office has discussed these issues with you for more than a year. I have appreciated your cooperation and hope that it will continue, but the time has come for real and decisive action. I urge you to act now to address serious and significant continuing shortcomings in the alpha rating system and the torch and other awards.

I look forward to your response to this letter with a plan to address these concerns no later than 15 days from receipt. The plan should include effective steps to reform the alpha system including de-coupling pay from ratings and, at a minimum, full and fair disclosure to consumers.

Very truly yours,

RICHARD BLUMENTHAL

RB/pas

c:   Richard D. Harris
     Day Pitney LLP
     242 Trumbull Street
     Hartford, CT 06103

# Exhibit "D"

orlandosentinel.com/business/os-kel-law-firm-bbb-complaints-20111029,0,7660906.story

# OrlandoSentinel.com

## KEL law firm resigns from Better Business Bureau amid client complaints

By Richard Burnett, Orlando Sentinel

7:03 PM EDT, November 2, 2011

Peppered with complaints by former clients, the KEL law firm has been forced to resign from the Better Business Bureau of Central Florida — the first area law firm to be ousted in the business-rating agency's 27-year history, the local BBB chief has confirmed.

The resignation of Orlando-based KEL, formally known as Kaufman, Englett & Lynd, from bureau membership followed a jump in the number of complaints during the past year and the BBB's determination that KEL had "failed to resolve the underlying cause(s) of a pattern of complaints," the agency's latest report states. The agency gives the firm an F rating — a rarity for a law firm.

advertisement


Although the firm has resolved all but three of the 39 complaints filed against it during the past three years, KEL's inability to slow the pace of the complaints — 27 in the past 12 months — moved the BBB to act in June, said Judy Pepper, the agency's chief executive officer.

"Once a company no longer meets our standards, they are not eligible to have the BBB accreditation," she said. "We will give those companies the opportunity to resign, or their membership will be revoked."

According to the BBB complaints, many of the former clients accused the high-profile, widely advertised law firm of charging thousands of dollars in fees for foreclosure-defense and mortgage-modification services that were poorly executed or never provided.

"There's no doubt I am losing my house now because of them," said Amanda Smith-Gillaspie of DeBary, who said she paid KEL more than $3,500 last year to defend her home against foreclosure. "They dropped the ball so many times, it was ridiculous. When I wouldn't pay them another $3,500, they dropped me. Then I started working directly with Citibank and found out KEL hadn't filed some of the paperwork at all."

KEL has denied such allegations, according to the BBB. In cases where it was accused of taking clients' money but doing nothing, the firm has cited specific dates on which it filed modification paperwork with clients' lenders. In some instances, the firm said, its clients provided erroneous or inadequate financial information, which delayed the process.

A KEL representative said last week that the firm worked diligently to address the complaints, which

constituted only a tiny fraction of the firm's 15,000 cases during the past three years. He acknowledged that KEL had resigned from the bureau's accredited-membership program, but only as a protest.

"We disagree strongly with the bureau, and we removed our membership because of the way this was being handled," spokesman Christian Hertenstein said. "We stand by our work and the services we perform for clients, and we always make a good-faith effort to resolve any issues they have."

The 39 complaints against KEL fielded by the local BBB during the past three years are more than for any other local law firm but one. The Johnson Law Group of Orlando, a BBB nonmember that specializes in debt-relief cases, has drawn 45 complaints during the same period — along with an F rating from the BBB.

More than 330 law firms are listed as accredited members of the Central Florida BBB — a designation that means they subscribe to the agency's formal dispute-resolution process and maintain at least a B rating. Overall, the bureau has files on nearly 2,800 law firms in an 11-county region surrounding Orlando.

Karen Pintor of St. Cloud said she paid KEL $4,000 for foreclosure-defense work. After a year, the firm said her lender had denied her request for a mortgage modification, and the firm wanted more money to continue her case. But Pintor said the lender later told her that her application had been denied, in part, because KEL had missed a deadline for filing certain paperwork.

She complained to the BBB, and KEL refunded her $1,000 — but Pintor was not satisfied.

"They made so many mistakes, I didn't feel they deserved any money from me," she said. "I started working with my lender directly, resubmitted the whole modification package, and did the legwork myself. Within a month, I got approved; I saved my house myself."

In its response to the BBB about Pintor's case, KEL denied making any errors. It blamed the problems on Pintor's incomplete financial documents and delays by the lender in reviewing her application. In denying her a full refund, it also cited her contract with KEL, which states that the original fee was a "flat, nonrefundable rate earned upon acceptance."

Larry Glinzman, a spokesman for Community Legal Services of Mid-Florida, said it is unfortunate that people buy into the notion that they must pay so much for legal help to save their home from foreclosure.

"The truth is many people really don't need a lawyer for loan-modification assistance," he said. "Why hire a lawyer when you can get help for free? Most people qualify for it these days; you can call our agency and any number of agencies. We have a reduced-fee program, as well, for people don't qualify for the free help."

*rburnett@tribune.com or 407-420-5256*

**When seeking help with a mortgage problem ...**

Check track records with the Better Business Bureau of Central Florida (orlando.bbb.org) before hiring a lawyer or other company.

Check The Florida Bar's website (flabar.org) for a lawyer's disciplinary history and licensing status.

Beware of high-pressure sales tactics and pitches to buy other services.

Beware of high upfront fees charged by law firms; shop for the best deal. Florida law prohibits any company from taking money in advance for loan-modification help — but law firms are exempt.

Seek help from a HUD-certified agency such as Community Legal Services of Mid-Florida (386-255-6573), CredAbility Credit Counseling of Central Florida (407-895-8886) or Consumer Debt Counselors of Winter Park (407-599-0057).

If you decide to work directly with your lender, be ready to document everything in writing each time you contact the lender's call center. Get a case number, each representative's name, and each person's direct call-back number. Keep your notes well-organized for ready reference.

Contact the nonprofit National Association of Consumer Advocates (202-452-1989 or naca.net) for advice about further assistance.

SOURCES: CEI Group, Sentinel research

Copyright © 2011, Orlando Sentinel