UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KAUFMAN, ENGLETT & LYND, PLLC,**

      **Plaintiff,**

v.                                                           Case No: 6:12-cv-31-Orl-28KRS

**BETTER BUSINESS BUREAU OF**
**CENTRAL FLORIDA, INC., COUNCIL**
**OF BETTER BUSINESS BUREAUS,**
**INC. and JUDY PEPPER,**

      **Defendants.**
_____/

## ORDER

Defendants Better Business Bureau of Central Florida, Inc. ("BBB"), Judy Pepper, and the Council of Better Business Bureaus, Inc.—all in the business of rating other businesses—allegedly published disparaging representations about the quality of Kaufman, Englett & Lynd, PLLC's legal services. Kaufman, Englett & Lynd, PLLC ("KEL") has sued Defendants under the Lanham Act and Florida law, alleging that Defendants' representations were misleading and made in breach of Defendants' accreditation agreement with KEL.[1] In order to have a cause of action under section

---

[1] KEL has filed an Amended Complaint (Doc. 26) alleging false advertising under the Lanham Act and state law "disparagement of business" and breach of contract claims. The Council has moved to dismiss the Amended Complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, while BBB and Pepper have moved to dismiss only under Rule 12(b)(6).
    The relevant filings before the Court are BBB and Pepper's Motion to Dismiss (Doc. 27), KEL's Response (Doc. 35), the Council's Motion to Dismiss (Doc. 28), KEL's Response (Doc. 36), and the Council's Reply (Doc. 40).

43(a)(1)(B) of the Lanham Act,[2] a plaintiff must compete commercially with the defendant. Because KEL does not compete with Defendants, KEL's Lanham Act claims against BBB and Pepper must be dismissed. Additionally, Florida's long-arm statute does not provide a basis for personal jurisdiction over the Council with respect to KEL's Lanham Act claim. That claim against the Council therefore shall be dismissed for lack of personal jurisdiction. The remaining claims against Defendants are state law claims over which the Court declines to exercise supplemental jurisdiction.

## I. Background

KEL is a Florida-based law firm that provides legal services in a variety of practice areas. The Council and BBB are non-profit corporations in the business of rating and reviewing other businesses. Pepper is BBB's president and CEO.

The Council was established in 1912. Among its stated goals are fostering consumer confidence and setting standards for marketplace trust. BBB is independently governed by its own board of directors, but it is required to comply with certain guidelines and requirements that the Council sets for local Better Business Bureaus.

Although BBB is based in Florida, the Council is not. The Council, a Delaware corporation, maintains its principal place of business in Arlington, Virginia.

According to KEL, Defendants published disparaging representations about its business—including an F rating—that were inaccurate and inconsistent with Defendants' own criteria for evaluating businesses. KEL also claims that Defendants

---

[2] 15 U.S.C. § 1125(a)(1)(B).

breached the terms of KEL's accreditation agreement with them by failing to apply contractually required standards in assessing the quality of KEL's services.

## II. Analysis

A. <u>KEL's Lanham Act Claim Against BBB and Pepper</u>

Count I of the Amended Complaint[3] alleges that BBB and Pepper violated 15 U.S.C. § 1125(a)(1)(B) by publishing "false and misleading descriptions and representations of fact about their own services" and by publishing "false information and misleading reviews of KEL." (Am. Compl. ¶¶ 86, 88). BBB and Pepper have moved to dismiss this count for failure to state a claim on the basis that none of their alleged misrepresentations constitute "commercial advertising or promotion" as required under section 1125(a)(1)(B).[4] For the reasons explained below, their motion must be **GRANTED** with respect to KEL's Lanham Act claim.

*i. Legal Standard for BBB and Pepper's Motion to Dismiss*

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must

---

[3] The Amended Complaint refers to the first count as "First Cause of Action."

[4] BBB and Pepper have also moved to dismiss KEL's Lanham Act claim on the basis that KEL lacks prudential standing. But because KEL has otherwise failed to state a claim under the Lanham Act, the Court need not decide this issue. <u>See</u> <u>Am. Iron & Steel Inst. v. OSHA</u>, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999) (pretermitting prudential standing issue because "prudential standing is flexible and not jurisdictional in nature").

3

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

  *ii. Whether KEL States a Claim Under the Lanham Act*

The Lanham Act provides in part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>   ***
>
> (B) in *commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).

BBB and Pepper argue that their alleged misrepresentations cannot constitute "commercial advertising or promotion" under the widely adopted test set forth in Gordon & Breach Science Publishers S.A. v. American Institute of Physics, 859 F. Supp. 1521, 1535-36 (S.D.N.Y. 1994). In Gordon & Breach, the court held:

> In order for representations to constitute "commercial advertising or promotion" under Section [1225(a)], they must be: (1) commercial speech; (2) *by a defendant who is in commercial competition with plaintiff*; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

Id. (emphasis added). Although KEL accepts that the Gordon & Breach test is applicable here, it nonetheless argues that commercial competition is not a necessary element of that test.

As an initial matter, KEL's choice of authority to support this argument is perplexing. First, KEL refers to cases in which courts did not strictly require direct competition with a defendant for a plaintiff to have prudential standing under the Lanham Act. (Doc. 35 at 11). But whether a plaintiff has prudential standing to bring a claim under the Lanham Act poses a separate question from whether a defendant's representations qualify as "commercial advertising or promotion" under section 1125(a)(1)(B).

Next, KEL cites a case from the Southern District of Florida, Futuristic Fences, Inc. v. Illusion Fence Corp., 558 F. Supp. 2d 1270 (S.D. Fla. 2008), for the proposition that "in interpretation of the Lanham Act, it has been consistently held by a number of Circuits that direct competition is not required under the Act, specifically because the plain language of the [A]ct does not demonstrate that competition was considered as part of the Congressional intent." (Doc. 35 at 11 (citing 558 F. Supp. 2d at 1279)). The Futuristic Fences case does not stand for any such proposition. On the contrary, the Futuristic Fences court stated in the section of the opinion to which KEL cites that "the majority of other circuits" have adopted the four-part test set forth in Gordon & Breach. Futuristic Fences, 558 F. Supp. 2d at 1279. The court then "found no reason to depart from the application of [the Gordon & Breach] test" and listed all four elements, including the requirement that the allegedly false representations be made "'by a defendant who is in commercial competition with plaintiff.'" Id. (quoting Gordon & Breach, 859 F. Supp.

5

at 1535-36). The court mentioned only a single circuit that had not adopted commercial competition as an element of "commercial advertising or promotion," noting that in Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48, 58 (2d Cir. 2002), the Second Circuit "adopt[ed] the first, third and fourth elements of the Gordon & Breach test, but declin[ed] to express an opinion on whether misrepresentations in 'commercial advertising and promotion' must be made by a defendant in commercial competition with the plaintiff." Id.

Even more perplexing is that immediately after referring to the Futuristic Fences case, in which the court correctly explained the holding of Fashion Boutique, KEL states that "[t]he case of Fashion Boutique of Short Hills modified the Gordon [&] Breach test, finding that . . . competition is not a necessary element." (Doc. 35 at 11-12). The Second Circuit in Fashion Boutique did not "modify" the Gordon & Breach test or otherwise find that "competition is not a necessary element." Rather, the Second Circuit stated that "[t]o decide this appeal, we need not decide whether . . . defendant and plaintiff [must] be competitors. We note that the requirement is not set forth in the text of Section 43(a) and express no view on its soundness." Fashion Boutique, 314 F.3d at 58; see also Boule v. Hutton, 328 F.3d 84, 91 (2d Cir. 2003) ("We did not need to reach in Fashion Boutique, and we do not need to reach here, whether the fourth prong from Gordon & Breach—that the defendant and the plaintiff be competitors—is necessary to find commercial advertising and promotion.").

In any event, this Court has previously found the Gordon & Breach test well-grounded, see Suntree Techs., Inc. v. Ecosense Int'l, Inc., 802 F. Supp. 2d 1273, 1286 (M.D. Fla. 2011), aff'd, 693 F.3d 1338 (11th Cir. 2012), and several circuits have

6

expressly adopted the Gordon & Breach test in its entirety, see Proctor & Gamble Co. v. Haugen, 222 F.3d 1262, 1273-74 (10th Cir. 2000); Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1384 (5th Cir. 1996). Additionally, the Eleventh Circuit has recently cited the Gordon & Breach test with approval, including the requirement that the defendant must be "in commercial competition with plaintiff." See Suntree Techs., 693 F.3d at 1349 (describing the Gordon & Breach test as "[t]he most widely-accepted test for determining whether something is 'commercial advertising or promotion'"). This Court will thus apply all four elements of the Gordon & Breach test to determine whether a representation falls within the meaning of "commercial advertising or promotion." BBB and Pepper therefore must compete commercially with KEL in order for their alleged misrepresentations potentially to violate the Lanham Act.

It is obvious on the face of the Amended Complaint that BBB and Pepper do not compete with KEL. KEL is a law firm, whereas BBB is a non-profit corporation in the business of evaluating and rating other businesses.[5] (Am. Compl. ¶¶ 1, 3, 19, 20, 33, 48). KEL nonetheless suggests that BBB and Pepper "participate in competition with Plaintiff" because their representations have cost KEL current and prospective clients and they have accredited and published favorable reviews of other law firms that pay a fee to maintain their accreditation. (Doc. 35 at 12). That KEL's current and prospective clients may have taken their business to competing law firms on the basis of BBB and Pepper's alleged misrepresentations does not, however, place BBB and Pepper themselves in commercial competition with KEL. See CHW Grp., Inc. v. Better Bus.

---

[5] As the president and CEO of BBB, Pepper does not compete with KEL either.

Bureau of New Jersey, Inc., Civil Action No. 11–3261 (JAP–TJB), 2012 WL 426292, at *4-5 (D.N.J. 2012) (unpublished) (applying the Gordon & Breach test and finding that business-rating organization did not compete with businesses it rated).

In sum, BBB and Pepper's alleged misrepresentations do not constitute "commercial advertising or promotion" under the Lanham Act.[6] KEL's Lanham Act claim against BBB and Pepper must therefore be **DISMISSED** for failure to state a cause of action.[7]

B. The Council's Motion to Dismiss

The Council argues that it is not subject to personal jurisdiction in Florida.[8] "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). First, the court "must examine the jurisdictional

---

[6] The Amended Complaint states that "[a]ll Defendants were at all times the principals, agents, and/or cooperated with each other . . . so that, as a result, all Defendants are jointly and severally liable for the actions herein alleged." (Am. Compl. ¶ 23). It is not clear whether KEL intends to assert its Lanham Act claim against BBB and Pepper based in part on the Council's alleged misrepresentations. To the extent KEL intends to do so, the claim still fails. As with the other defendants, KEL alleges that the Council is in the business of evaluating and rating other businesses. The Council therefore does not compete with KEL, and its alleged misrepresentations cannot constitute "commercial advertising or promotion."

[7] Because KEL clearly cannot cure this defect in an amended pleading, the Lanham Act claim against BBB and Pepper will be dismissed with prejudice.

[8] Although the Council also moves to dismiss KEL's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "judgments of courts lacking *in personam* jurisdiction are judgments *coram non judice*," Feinstein v. Resolution Trust Corp., 942 F.2d 34, 40 (1st Cir. 1991), and "[a]s a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims," Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997); see also Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).

issue under the state long-arm statute." Id. Second, the court "must ascertain whether or not sufficient minimum contacts exist to satisfy the Due Process Clause . . . so that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (citations and internal quotations omitted). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).

"A plaintiff seeking to obtain jurisdiction over a nonresident defendant initially need only allege sufficient facts to make out a prima facie case of jurisdiction." Posner, 178 F.3d at 1214. "The defendant then must 'raise[ ], through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction.'" Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009) (quoting Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996)) (alteration in original). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" Id. (quoting Sculptchair, 94 F.3d at 627).

"The Florida long-arm statute provides two bases for the exercise of personal jurisdiction: specific and general jurisdiction." PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 808 (11th Cir. 2010). In particular, Florida's long-arm statute provides, in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

9

>    (b) Committing a tortious act within this state.
>
>    \*\*\*
>
>    (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

§ 48.193, Fla. Stat.

KEL argues that the Council is subject to general jurisdiction under subsection (2) and subject to specific jurisdiction under subsection (1). To support general jurisdiction over the Council, KEL points to the principle that a foreign corporation exercising control over a subsidiary in Florida may be subject to personal jurisdiction in Florida. See, e.g., Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1146-48 (Fla. 3d DCA 2007). For the Court to have general jurisdiction over the Council based on BBB's activities in Florida, however, the Council must "exert[ ] such extensive operational control over [BBB] that [BBB] is no more than an agent existing to serve only [the Council's] needs." Id. at 1146. To that end, KEL alleges that BBB is "directly under the control of the [the Council]," (Am. Compl. ¶ 16), is "merely a local agent for [the Council]," (Doc. 36 at 6), and "has no other purpose or role than to implement the policies, procedures and standards set forth by the [the Council]," (id.).

Yet the Council has presented evidence that it does not own or control shares in BBB and exercises no control over the daily operations of BBB or Pepper. (See Baskin Aff., Doc. 28-1).[9] Beverly Baskin, a senior vice president of the Council, states in her affidavit that the Council "has no operational control over the daily operations of [BBB] or Judy Pepper," (id. ¶ 3), and the Council's bylaws expressly state that "[s]ubject to

---

[9] The Council has also presented evidence that it does not maintain an office or own real estate in Florida. (Baskin Aff. ¶ 2).

10

operation of member BBBs in compliance with [the] Bylaws, member BBBs shall enjoy full authority with respect to their internal governance and methods of operation, and the Council shall not infringe thereon," (id. at Ex. A). KEL has not presented any evidence to the contrary. Moreover, KEL acknowledged in its Amended Complaint that BBB "is independently governed by its own board of directors." (Am. Compl. ¶ 36).

Although BBB pays dues to the Council for the use of the Council's marks and agrees to comply with the Council's policies, (Baskin Aff. ¶ 8 & Ex. A), there is no evidence that the Council exercises operational control over BBB or that BBB otherwise exists solely to serve the Council. See Gadea, 949 So. 2d at 1145-49 (noting that "[s]haring some officers and directors, having a unified or 'global' strategy and goals, cross-selling in promotional materials, and performing services for one another" does not constitute sufficient operational control to establish general jurisdiction over a foreign parent corporation); see also Gen. Cigar Holdings, Inc. v. Altadis, S.A., 205 F. Supp. 2d 1335 (S.D. Fla. 2002) (finding no general jurisdiction over foreign parent corporation with subsidiary in Florida despite parent and subsidiary's "regular and extensive contact" and "very close working relationship"), aff'd, 54 F. App'x 492 (11th Cir. 2002). KEL therefore has not met its burden of proving that Florida's long-arm statute provides for general jurisdiction over the Council.

Next, KEL argues that Florida's long-arm statute provides specific jurisdiction over the Council for the causes of action in the Amended Complaint. Because KEL's Lanham Act claim provides the sole basis for original subject matter jurisdiction, the Court will first determine whether the Council is subject to specific jurisdiction with respect to that claim. In Florida, however, "before a court addresses the question of

11

whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" PVC Windoors, Inc. 598 F.3d at 808 (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)). KEL makes the same allegations against the Council as against the other defendants and likewise fails to state a cause of action under the Lanham Act.[10] Florida's long-arm statute therefore does not provide for specific jurisdiction over the Council with respect to that claim. KEL's Lanham Act claim against the Council is therefore **DISMISSED** for lack of personal jurisdiction.

    C. Remaining State Law Claims

KEL's remaining claims against Defendants are state law claims. In light of the Court's disposition of KEL's Lanham Act claims against Defendants—the only claims over which it has original subject matter jurisdiction—the Court declines to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3).

### III. Conclusion

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** that:

1. BBB and Pepper's Motion to Dismiss (Doc. 27) is **GRANTED**. KEL's Lanham Act claim against BBB and Pepper is **DISMISSED with prejudice**. KEL's state law claims against BBB and Pepper—disparagement of business and breach of contract—are **DISMISSED** without prejudice to KEL pursuing them in state court. As set forth in

---

[10] As explained earlier, the Council is in the business of evaluating and rating other businesses. The Council therefore does not compete with KEL as required for KEL to have a cause of action under section 1125(a)(1)(B).

28 U.S.C. § 1367(d), the period of limitations is tolled for a period of thirty days after this dismissal unless Florida law provides for a longer tolling period.

  2. The Council's Motion to Dismiss (Doc. 28) is **GRANTED**. KEL's Lanham Act claim against the Council is **DISMISSED** for lack of personal jurisdiction. KEL's state law claims against the Council—disparagement of business and breach of contract—are **DISMISSED** without prejudice to KEL pursuing them in state court. As set forth in 28 U.S.C. § 1367(d), the period of limitations is tolled for a period of thirty days after this dismissal unless Florida law provides for a longer tolling period.

  3. All other motions are **DENIED** as moot.

  4. The Clerk is directed to close this file.

**DONE** and **ORDERED** in Orlando, Florida on February 13, 2013.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:

Counsel of Record